No. 07-597C
(Judge Bruggink)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DATA MANAGEMENT SERVICES JOINT VENTURE,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# INTERVENOR ALON, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AND OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD

Douglas L. Patin
BRADLEY ARANT ROSE & WHITE LLP
1133 Connecticut Ave., N.W., 12th Floor
Washington, D.C. 20036
Tel. 202-719-8241
Fax 202-719-8341
dpatin@bradleyarant.com
*Attorney of Record for Intervenor, ALON, Inc.*

*Of Counsel*

Jeremy Becker-Welts
BRADLEY ARANT ROSE & WHITE LLP
1133 Connecticut Ave., N.W., 12th Floor
Washington, D.C. 20036
Tel. 202-719-8207
Fax 202-719-8307
jbeckerwelts@bradleyarant.com

**Protected Information To Be Disclosed Only In Accordance With U.S. Court of Federal Claims Protective Order**

August 22, 2007

5/7562.2

# TABLE OF CONTENTS

QUESTIONS PRESENTED ........................................................................................ 1

I. Whether The Protester Has Proven By Clear And Convincing Evidence That NARA Did Not Rationally Evaluate ALON's And DMSJV's Corporate Experience .................. 1

II. Whether The Protester Has Proven By Clear And Convincing Evidence That NARA Did Not Rationally Find That ALON Identified A Senior Risk Management Specialist Which Met The Desired Qualifications Stated In The RFQ ............................. 1

ARGUMENT ........................................................................................................ 1

I. STANDARD OF REVIEW ................................................................................. 1

II. NARA RATIONALLY EVALUATED CORPORATE EXPERIENCE .......................... 2

A. The RFQ's Corporate Experience Criteria Were Not Minimum Acceptability Standards or Definitive Responsibility Criteria ..................................................... 2

B. This Court Should Not Substitute Its Subjective Judgment For That Of NARA's When Applying Broad, General Corporate Experience Criteria to Highly Complex Work Requirements ..................................................... 4

C. The Court Should Analyze The Rationality of NARA's Evaluation Based Upon Reading The RFQ As A Whole ..................................................... 5

III. THE GAO DECISION ON WHETHER THE AGENCY PROPERLY EVALUATED CORPORATE EXPERIENCE SHOULD NOT BE GIVEN ANY SPECIAL DEFERENCE ........................................................................... 7

IV. DMSJV'S OTHER CORPORATE EXPERIENCE ARGUMENTS ARE MOOT ........... 9

V. THE AGENCY PROPERLY CONSIDERED THE EXPERIENCE OF ALON'S TWO PRINCIPALS IN THE EVALUATION OF ALON'S CORPORATE EXPERIENCE ....................................................................................... 10

A. NARA Could Rationally Rely Upon Oral Information Provided During The Oral Presentations .......................................................................... 10

B. Experience of Corporate Officials May Be Taken Into Consideration................. 11

C. DMSJV Has Not Proven That NARA Treated It Differently. .............................. 12

VI. NARA RATIONALLY DETERMINED THAT ALON PROPOSED A SENIOR RISK MANAGEMENT SPECIALIST WHO MET RFQ SCHEDULE 70 REQUIREMENTS ........................................................................................ 13

A. ALON's Proposed Senior Risk Management Specialist Easily Met The RFQ Requirements. ........ 14

B. The Schedule 70 Position Proposed Did Not Have to Match The RFQ Labor Category Description ........ 16

VII. CONCLUSION ........ 18

# TABLE OF AUTHORITIES

**Cases**

*Blue Rock Structures, Inc.*, B-287960.2, 2001 CPD ¶ 184 .......... 11

*CACI Field Services, Inc. v. United States*, 13 Cl. Ct. 718 (1987) .......... 1, 3

*Cubic Application, Inc., v. United States*, 37 Fed. Cl. 339 (1997) .......... 2

*Firth Construction Co. v. United States*, 36 Fed. Cl. 268 (1996) .......... 2

*Global Engineering & Construction*, B-290288.3, 2003 CPD ¶ 180 .......... 11

*Honeywell, Inc. v. United States*, 870 F.2d 644 (Fed. Cir. 1989) .......... 2

*Interstate General Government Contractors, Inc.*, B-290137.2, 2002 CPD ¶ 105 .......... 12

*John C. Grimberg v. United States*, 185 F.3d 1297 (Fed. Cir. 1999) .......... 3

*Prudent Technologies*, B-297425, 2006 CPD ¶ 16 .......... 3, 4

**Statutes**

FAR 15.102(a) .......... 11

FAR 15.102(e) .......... 11

Intervenor, ALON, Inc. ("ALON") Files this Memorandum Of Points And Authorities In Support Of Its Motion For Judgment Upon The Administrative Record And Opposition To Plaintiff's Motion For Judgment Upon The Administrative Record.

## QUESTIONS PRESENTED

**I. Whether The Protester Has Proven By Clear And Convincing Evidence That NARA Did Not Rationally Evaluate ALON's And DMSJV's Corporate Experience**

**II. Whether The Protester Has Proven By Clear And Convincing Evidence That NARA Did Not Rationally Find That ALON Identified A Senior Risk Management Specialist Which Met The Desired Qualifications Stated In The RFQ**

## ARGUMENT

### I. STANDARD OF REVIEW

The Court has a very limited standard of review over Defendant's (hereinafter referred to as "NARA" or the "Agency") evaluation of ALON's and Plaintiff's (hereinafter "DMSJV or "protester") proposals, especially since this complaint involves the exercise of discretion applying technical evaluation factors in a negotiated procurement. *CACI Field Services, Inc. v. United States*, 13 Cl. Ct. 718 (1987). The court should only intervene "when it is clearly determined that the agency's determinations were irrational or unreasonable." *Id.* at 725. The burden is on plaintiff/protester to demonstrate through clear and convincing evidence that there was no rational basis for the agency's determination. *Id*. There is broad discretion in negotiated procurements. *Id.*

ALON disagrees with DMSJV's position on the standard of review when a GAO decision is involved. Even with a GAO decision, the court's focus is not on whether the GAO decision is rational. The focus is on whether the agency's actions were rational. *Cubic Application, Inc., v. United States*, 37 Fed. Cl. 339, 341 (1997):

> The APA contemplates court review, on a limited basis, of "agency action." 5 U.S.C. § 702. Whatever the focus of inquiry might be in the event the agency accedes to the GAO recommendation by altering its prior action, FN2 here the "final" agency action remains the same-the Army's award to Logicon. It is that decision and not the GAO recommendation that is subject to review here. *Health Sys. Mktg. & Dev. Corp. v. United States*, 26 Cl.Ct. 1322, 1325 (1992).

As this court noted in *Cubic, Honeywell, Inc. v. United States*, 870 F.2d 644, 649 (Fed. Cir. 1989), involved an agency changing its conduct in response to a GAO recommendation -- which is not the case here. *Cubic*, at 341, FN2. Thus, DMSJV's focus on the GAO decision as being rational or not is wrong.[1]

DMSJV's reliance on *Firth Construction Co. v. United States*, 36 Fed. Cl. 268 (1996) is also wrong, because like *Honeywell, Firth* involved agency action changing conduct based upon a GAO decision which had reversed prior agency action. In this case, the agency's award decision is not based upon a GAO decision. Thus, the Court's focus is whether the protester has demonstrated through clear and convincing evidence that the agency's decision was not rational-not whether GAO's decision was irrational.

## II. NARA RATIONALLY EVALUATED CORPORATE EXPERIENCE

### A. The RFQ's Corporate Experience Criteria Were Not Minimum Acceptability Standards or Definitive Responsibility Criteria

Protester contends that ALON's alleged failure to provide evidence of performance of contracts that were of the same magnitude of work in support of the Corporate Experience subfactor should have led the agency to find ALON's proposal unacceptable. Complaint, ¶ 19.

[1] This court may rely upon a GAO decision "for general guidance to the extent it is reasonable and persuasive in light of the administrative record." *Id*. at 342.

First, none of the individual factors listed under the Corporate Experience evaluation criteria are identified in the RFQ as minimum acceptability standards. This type of standard is illustrated in *Prudent Technologies*, B-297425, 2006 CPD ¶ 16. In that case, the RFP required that each offeror answer questions within each of three evaluation factors "in order for the offeror to be deemed acceptable for this factor." *Id.* at 2. The offeror failed to provide adequate answers and the agency found the proposal unacceptable. The GAO concluded that the agency reasonably found the protester's proposal deficient and denied the protest.

By contrast in the present case, the RFQ sets out Corporate Experience as:

> "Demonstrated recent and relevant corporate experience on work of similar scope, magnitude and nature: experience in staffing on-site program management support to major systems software development or integration projects. (Oral Presentation about what the firm has done)."

AR 167. There is no language indicating that a failure to have performed a contract of similar size would render the offeror unacceptable. The assessment of strengths or weaknesses concerning the magnitude of prior contracts performed by ALON was the appropriate manner for NARA to evaluate an offeror's response for Corporate Experience in this solicitation.

None of the cases cited by DMSJV at pp. 13-15 of its Memorandum on this issue are applicable to the solicitation and facts in this case. *John C. Grimberg v. United States*, 185 F.3d 1297 (Fed. Cir. 1999) involved the application of definitive responsibility criteria in an IFB for a construction contract. *CACI Field Services v. United States*, 13 Cl. Ct. 718 (Cl. Ct. 1987) involved an A-76 RFP wherein offerors were notified that a failure to provide a satisfactory offer in any one technical element would result in an unsatisfactory rating. In evaluating the protester's corporate experience, the Court found that the contracting officer had a rational basis to conclude that the offeror had failed to provide sufficient information to satisfy the element (just as a contracting officer can have a rational basis to find that an offeror has provided

sufficient information). *Prudent Technologies*, B-297425, 2006 CPD ¶ 16, as discussed above, involved a clearly stated minimum acceptability standard applied within RFP evaluation criteria. None of these cases are applicable to this solicitation.

**B. This Court Should Not Substitute Its Subjective Judgment For That Of NARA's When Applying Broad, General Corporate Experience Criteria to Highly Complex Work Requirements**

ALON requests the Court to read the highly complex tasks the successful awardee was to perform under the contract at AR 51-54. The agency's analysis of an offeror's Corporate Experience being relevant for the performance of those tasks was very subjective by its nature.

NARA summarized its evaluation of ALON's Corporate Experience as follows:

> ALON's Strengths: The Offeror presented a well coordinated team, with a disciplined PM. Although a very small business, the principals and PM had a good grasp of challenges facing ERA and had records management domain knowledge. Although most of the Offeror's response comments were focused on one IRS project, which was a development project that was not similar in scope, magnitude or nature to the ERA POST, and not directly relevant to ERA POST needs, the Offeror later demonstrated recent and relevant corporate experience on work of similar scope, magnitude and nature on their TSA, NWS and MDA contracts. Offeror's senior staff has experience and has worked on several major software programs. The Offeror demonstrated good experience in staffing on-site program management support to major systems software development or integration projects.
>
> Weaknesses: PM well qualified in O&M, and well qualified in the business of Project Management but was relatively weak technically for IT or software integration.

AR 1159.

Applying the standard of review applicable in this case requires the court to find that NARA was irrational in applying the Corporate Experience evaluation factors in order to find in DMSJV's favor. The evaluation factors set out in the RFQ for Corporate Experience states:

> "CORPORATE EXPERIENCE: Demonstrated recent and relevant corporate experience on work of similar scope, magnitude and nature: experience in staffing on-site program management support to major systems software development or integration projects. (Oral Presentation about what the firm has done)."

AR 167 (emphasis added).

The Agency could rationally consider any of the other factors, such as scope and nature, listed in Corporate Experience as relevant if the related experience was not tied to a contract of a similar dollar amount as the RFQ. The language is broad, general, and necessarily involves subjective considerations. Drawn to its logical conclusion, Protester's argument would preclude consideration of any corporate experience that did not incorporate – in the same contract – every single one of the criteria listed in the RFQ for consideration under Corporate Experience. Clearly, the word *magnitude* is only one of at least five other criteria to be examined; such as (1) recent; (2) similar scope; (3) similar nature; (4) specific experience in staffing on-site program management support to major systems software development; and/or (5) specific experience in staffing on-site program management support to major systems software integration projects.

These evaluation criteria do not rank any one of them as more important than any other. Nor does it state that all criteria have to be met for prior contract experience to be considered relevant. Absent some clear RFQ language to the contrary, the agency had the discretion to weigh the relative value of all the factors listed to be considered under Corporate Experience. Given the broad, general language, and highly complex tasks to be performed, this court should not substitute its subjective judgment for that of NARA in evaluating ALON's Corporate Experience.

**C. The Court Should Analyze The Rationality of NARA's Evaluation Based Upon Reading The RFQ As A Whole**

The rationality of NARA's actions must be considered in reading the RFQ as a whole. Under the criteria for evaluating past performance, NARA contemplated evaluating proposals from offerors that had not had the opportunity to perform prior contracts at a dollar magnitude similar to the RFQ. The RFQ stated:



5/7562.2

> "If the prime Contractor or its subcontractors have no past performance history in the requisite contract amount, the Offeror may submit information on past performance at lower dollar levels, providing that the Offeror adheres to the above limitations as to the number of chronologically consecutive contracts."

AR 145. By this language, the Agency indicated no intention of disqualifying a potential offeror because it had not performed a contract of similar dollar size. Logically, NARA would also consider contracts of lesser magnitude when evaluating Corporate Experience. NARA's interpretation of its discretion to consider Corporate Experience of contracts with less dollar value than the solicitation is rational given this language in the Past Performance section of the RFQ.

Another major factor to be taken into consideration when evaluating the rationality of the agency's action was that Achievement of Socio-Economic Objectives was the most important evaluation factor for award. AR 167. That factor stated:

> ACHIEVEMENT OF SOCIO-ECONOMIC OBJECTIVES: In accordance with the Government policy to provide maximum practicable opportunities in its acquisitions to small business, preference over any non-small business will be given to a small business which rates highly on the technical and management factors and provides fair market value. Please note that this Factor when added to price and other factors may make the offer of a non-small business not the best value. (Written submittal confirming Small Business status).

It is hard to imagine how the goal of awarding to small business could ever be achieved if the offeror had to have Corporate Experience performing a $64 million contract when such experience would likely have disqualified it as a small business under this procurement.[2] This part of the RFQ needs to be taken into account when evaluating the rationality of NARA's application of Corporate Experience in considering relevant Corporate Experience performing contracts with a lesser magnitude.

---

[2] The procurement was planned as a Delivery or Task Order under existing GSA Schedule 70 Special Item Number (SIN 132-51) Professional Information Technology Services, FPDS Codes: D302, D306, and D399. (AR 6). The matching NAICS code for these FPDS Codes is 541512. (http://www.census.gov/epcd/naics02/def/ND541512.htm). The size standard for a small business under NAICS code 541512 is $23 million. 13 C.F.R. § 121.201.

DMSJV has not proven by clear and convincing evidence that NARA acted irrationally in evaluating contracts of lesser value when evaluating ALON's corporate experience.

## III. THE GAO DECISION ON WHETHER THE AGENCY PROPERLY EVALUATED CORPORATE EXPERIENCE SHOULD NOT BE GIVEN ANY SPECIAL DEFERENCE

ALON addresses the GAO's decision because: (1) it is a part of the record and the Court will read the decision and give it whatever weight it feels it is due, and (2) the logic in that decision supports the agency's evaluation of ALON's corporate experience. ALON contends that GAO improperly read the RFP's evaluation factors to require that corporate experience be similar in all three respects to be considered relevant under Corporate Experience. The plain language of the RFP does not say what GAO concludes. The RFP states:

> b) CORPORATE EXPERIENCE: Demonstrated recent and relevant corporate experience on work of similar scope, magnitude and nature; experience in staffing on-site program management support to major systems software development or integrating projects. (Oral Presentation about what the firm has done). AR 167.

GAO's decision states:

> In our view, it was not consistent with the terms of the RFQ, which essentially provided that prior work efforts had to be similar in scope, magnitude, and nature to be considered relevant, for the evaluators to have considered ALON's contracts with the TSA, NWS, and MDA relevant. *See Si-Nor, Inc*. B292748.2 et al., Jan. 7, 2004, 2004 CPD¶ 10 at 17. We think that this case is distinguishable from *Computer Sys. Dev. Corp*. cited by the agency above, in that in the cited case, the solicitation identified size, complexity, and participation as factors to be considered in determining the significance of a prior work effort, but did not require that a project have been similar in all three respects to the considered significant, whereas here, the RFQ defines relevant work as work of similar scope, magnitude, and nature, meaning that all three factors need to be present for a contract to be considered relevant.

AR 1575. The RFP simply does not say that "all three criteria need to be present for a contract to be considered relevant." GAO adds a requirement not in the RFQ. GAO improperly substituted its subjective opinion for NARA on how to read a general, subjective broad

evaluation factor and apply it. The RFQ language left up to the evaluator's discretion to weigh the relative importance of "similar" general references to "scope," "magnitude," and "nature."

GAO's rationale fails to take into account when analyzing Corporate Experience that offerors were told that in evaluating Past Performance that:

> If the prime Contractor or its subcontractors have no past performance history in the requisite dollar amount, the Offeror may submit information on past performance at lower dollar levels…"

AR 145.

In another part of its decision, GAO notes in reference to this very language:

> To the extent that the protester is arguing that NARA should not have considered ALON's lower-value contracts relevant despite the RFQ language explicitly permitting the submission of past performance information pertaining to such efforts, we disagree; it would make no sense for the agency to permit vendors to submit information on lower-value contracts if it did not intend to consider it.

AR 1579. ALON contends that this logic supports the agency's consideration of lower magnitude contracts when evaluating ALON's corporate experience. Obviously, when read as a whole, the RFP's evaluation criteria contemplated and permitted contracts of lesser magnitude to be considered in evaluating offerors. It was rational for NARA to consider contracts of lesser magnitude under Corporate Experience given the language in the Past Performance criterion on submitting contracts with lesser value.

GAO also recognized that the protester interpreted the RFP requirements to allow consideration of corporate experience not of a similar magnitude dollar-wise:

> Indeed, since three of the five contracts cited by the protester in its quotation as examples of <u>corporate experience</u> have present values of less than 5 percent of its evaluated price for the services here, it appears that the protester, like the agency and successful vendor, assumed that contracts dissimilar in dollar-value might nonetheless be considered relevant if sufficiently similar in other respects.

AR 1576 (emphasis added). If DMSJV read the solicitation as NARA and ALON did, i.e., that contracts of lesser magnitude could be relevant, then DMSJV's proposal supports the rationality of the Agency's actions in evaluating ALON's corporate experience.

In its decision GAO states:

> Further, regarding the protester's argument that there is no evidence in the record that the contracts worked on by ALON's corporate staff were similar in magnitude to the effort here, as discussed above, we think that the agency could properly consider such efforts provided the contracts were sufficiently similar in other respects.

AT 1576-77. This logic supports the agency's consideration of ALON's corporate experience with contracts of lesser magnitude provided that the contracts were sufficiently similar in scope or nature.

For these reasons, ALON contends this court should not adopt GAO's conclusion on whether the agency properly evaluated ALON's corporate experience.

## IV. DMSJV'S OTHER CORPORATE EXPERIENCE ARGUMENTS ARE MOOT

In furtherance of its Corporate Experience challenge, DMSJV argues at pp. 13-17 of its Memorandum that the contracts relied upon by ALON for corporate experience were not similar in size to the work in the RFQ. Those arguments are not relevant if this court finds that the agency rationally considered contracts of lesser magnitude dollar wise when evaluating ALON's corporate experience.

In this argument DMSJV contends that NARA could only consider information provided in writing by an offeror. We will address how far-fetched that position is in the next argument.

## V. THE AGENCY PROPERLY CONSIDERED THE EXPERIENCE OF ALON'S TWO PRINCIPALS IN THE EVALUATION OF ALON'S CORPORATE EXPERIENCE

### A. NARA Could Rationally Rely Upon Oral Information Provided During The Oral Presentations

DMSJV's argument rests upon a faulty premise, i.e., that the agency could not rely upon any information provided in the oral presentations. DMSJV argues at pp. 22-23 of its Memorandum that NARA could not consider any oral information provided during oral presentations which was not in writing in an offeror's written quote. The protester at p. 22 of its Memorandum cites the following statement from the RFQ to support its argument:

> Data not submitted with the Offeror's quote, but submitted previously, or presumed to be known (i.e., previous projects performed for the Government) cannot and will not be considered as part of the Offeror's quote.

AR 143. This language simply states the obvious, i.e., the agency cannot be presumed to read or rely upon information not provided to it in the written quote. This clause does not preclude reliance upon information provided later in the oral presentations. DMSJV's argument wrongly contends that no information provided in the oral presentations not otherwise provided in an offeror's written quote could be relied upon by NARA. Certainly, the RFQ does not say that. *See* AR 151-52.

As the Contracting Officer's Statement of Facts points out, the RFQ tells offerors that the oral presentations are relied upon to demonstrate an understanding of the work statement pertaining to corporate experience. The agency is not limited to relying upon the written information appearing on the slides themselves, or in the written quotes. Indeed, follow-up written questions and 30 minutes of oral responses to those written questions are part of the oral presentations. AR 1416-17. *See* also extensive discussion of oral presentation process in the Contracting Officer's Statement of Facts In Response To The Supplemental Protest. AR 1447-

48. The RFQ did not limit the agency's consideration of information to the written quotes or the written information provided on the slides. There is no sense in having oral presentations if NARA cannot rely upon the oral information provided during them.

FAR 15.102(a) approves the use of oral presentations to streamline the source selection process. The recordkeeping for oral presentations is left up to the discretion of the source selection authority. FAR 15.102(e). The only required recordkeeping is to document "what the Government relied upon in making the source selection decision." FAR 15.102(e). The Agency is not required to record everything said during the oral presentations.

**B. Experience of Corporate Officials May Be Taken Into Consideration**

On the merits, DMSJV has not proven by clear and convincing evidence that NARA was irrational in considering the experience of ALON's principals when evaluating ALON's corporate experience. Nothing in the RFQ precludes consideration of a corporation's principal's experience when considering a company's experience. Companies perform contracts through individuals. A corporation obviously benefits from its principals' experience gained either before they formed the corporation, or before they joined the corporation. The rationality of this logic is apparent. ALON's principals' experience is separate from the experience of the individuals ALON proposed to work on the contract, who are evaluated separately under Personnel. AR 167.

GAO case law has approved the consideration of a firm's principals' prior work experience with other firms in evaluating corporate experience unless the solicitation states otherwise. *Global Engineering & Construction*, B-290288.3, 2003 CPD ¶ 180 (principals' previous experience considered in evaluating corporate experience); *Blue Rock Structures, Inc.*, B-287960.2, 2001 CPD ¶ 184 (agency reviewed principals' experience while evaluating the firm's corporate experience factor); *Interstate General Government Contractors, Inc.*, B-

290137.2, 2002 CPD ¶ 105 (agency could consider offeror's principal's experience in a different company when considering offeror's past experience). DMSJV's brief cites no authority to the contrary.

**C. DMSJV Has Not Proven That NARA Treated It Differently.**

DMSJV also argues that NARA failed to consider the experience of its own principals. Memorandum at pp. 23-24. DMSJV points to no evidence that NARA did not provide an opportunity to speak about its principals' past experience if DMSJV had chosen to do so. In one of its submissions to GAO, DMSJV states:

> The President of DMSJV, Magdalah Silva, and the Chief Financial Officer, Joseph Kopfman, were present at the oral presentation, but they were not invited by NARA to present their individual experience.

AR 1549. Nothing in the record suggests that ALON was "invited" to present its principals' personal experience.

The following written questions were among those given to ALON to address in the 30 minute question and answer session of the Oral Presentation:

CORPORATE EXPERIENCE

- Please identify which of your past experiences is most relevant to the POST and explain how you would apply this experience in the POST.
- What are the most important lessons you learned from past experience that you would apply to the POST contract?
- Please describe your experience in managing the lifecycle development of large IT systems?
- Describe your approach to Configuration and Risk Management.

AR 799. Nothing in these questions "invited" ALON to talk about its principals' experience with other companies. Nothing precluded ALON from discussing its principals' experience in response.

The following written questions were given to DMSJV in its 30 minute question and answer period:

CORPORATE EXPERIENCE

- What do you see as the major challenges facing ERA? How does your corporate experience equip you to address those specific challenges?
- What are the most important lessons you learned in the prior POST contract? How would you apply these lessons if awarded the follow-on contract?
- Given your experience, and the possibilities in RFQ for additional POST staffing, what would be your priority recommendations for additional staff?
- What advantage does the Joint Venture bring to the POST over AS alone?

As with ALON, NARA did not invite nor preclude a discussion of DMSJV's principals' experience in other companies when responding to these questions. There is no evidence in the administrative record that DMSJV principals did not in fact speak about such experience. There is no basis to conclude they were denied the chance to do so if they wished.

Simply put, DMSJV has <u>not</u> proven that it was treated any differently than ALON in the question and answer session involving corporate experience.

## VI. NARA RATIONALLY DETERMINED THAT ALON PROPOSED A SENIOR RISK MANAGEMENT SPECIALIST WHO MET RFQ SCHEDULE 70 REQUIREMENTS

DMSJV's argument wrongly mixes two concepts in its argument. First, there are <u>personnel</u> requirements which have to be met for the RFQ labor categories. As will be shown below, ALON's proposed Senior Risk Management Specialist easily met those requirements. DMSJV's brief completely ignores this point. The second different concept is that an offeror must propose a Schedule 70 position <u>or equivalent</u> to the labor category described in the RFQ. There is no requirement for the offeror's Schedule 70 position description to fully match the RFQ's position description. In fact, <u>none</u> of the offerors' Schedule 70 descriptions fully match the RFQ's position description. While every offeror understood that the <u>particular</u> person

proposed was critical in meeting the RFQ requirements, none understood that its proposed Schedule 70 position description had to fully match the RFQ position description.

**A. ALON's Proposed Senior Risk Management Specialist Easily Met The RFQ Requirements.**

At page 30 of its Memorandum, DMSJV quotes the following from enclosure 2 of the RFQ:

> The Offeror must submit a formal written Personnel Data Form showing all relevant training, education, and work experiences that are pertinent to this task order for each person being proposed to work under this task order. All personnel proposed under Item 00001, as listed for this task order are considered to be key personnel. *The government expects that all personnel meet the requirements contained in the SOW.* (Blank PDF forms provided as attachment to RFQ).

AR 145 (emphasis added).

Notably, DMSJV completely ignores the Personnel Data form that ALON did submit for this position – for good reason. The person ALON submitted greatly exceeded the description of the Senior Risk Management Specialist in the RFQ which describes the "desired level of education, the desired quality of experience, and the desired years of experience the Government believes necessary to accomplish the tasking." AR 105. For the labor category titled "Senior Risk Management Specialist," the Agency provided the following information:

**CATEGORY 8. SENIOR RISK MANAGEMENT SPECIALIST (or equivalent)**

| | |
|---|---|
| FUNCTION: | Implements ERA Risk Program including support to the Risk Review Boards and Risk Review Teams. Facilitates formal Risk Management meetings. Manages operations of risk management tools. Develops risk scenarios and assesses impact on schedule, cost and program mission. Reviews ERA risk related deliverables from ERA PSI Contractor. Writes or updates ERA Program Management Risk Plans, procedures, and processes. Performs other tasks as directed. |
| DESIRED EDUCATION: | Bachelor's Degree (BA/BS) in Business Administration, Public Administration, Engineering or related field. Eight years progressively responsible experience with increasingly more complex or difficult assignments may be substituted for educational requirement. |
| DESIRED GENERAL | Twelve years experience in planning or performing project or program risk analysis and management efforts. |

| | |
|---|---|
| EXPERIENCE: | |
| DESIRED SPECIALIZED EXPERIENCE: | Two years experience in facilitating risk review meetings and in applying currently available risk management tools such as Risk and Risk Radar on project plans, technical approaches, project schedule or cost estimation. |

AR 109.

In its proposal to staff the position, ALON submitted Ms. Brenda Simpson as its candidate. As shown above, the Agency desired a candidate with a Bachelors Degree in Business Administration, Public Administration, Engineering or related field. Ms. Simpson has a Master of Accounting, Financial Budgeting & Management. AR 282. The Agency desired a candidate with 12 years experience in planning or performing project or program risk analysis and management efforts. Ms. Simpson's resume documented 17 years, 10 months experience in planning and performing projects, program risk analysis, and program and project management. AR 278 – 280. The Agency desired a candidate with 2 years experience in facilitating risk review meetings and in applying currently available risk management tools such as Risk and Risk Radar on project plans, technical approaches, project schedule or cost estimation. Ms. Simpson demonstrated 6 years, 11 months specialized experience which encompassed: development of project management and risk management plans for the State Department's ECA-MIS, using simulation techniques and tools, and risk monitoring and mitigation tools; performing risk management studies and activities related to supporting the Sybase Database Maintenance effort for the Small Business Administration; and as SEI/CMM Manager/Project Manager for the Drug Enforcement Administration, mentoring the DEA's Requirements Management, Risk Management, Software Project Tracking and Oversight Process Action Teams and leading those teams to achieve SEI/CMM levels 2 and 3 certification. AR 282. In summarizing Ms. Simpson's relevant experience and qualifications, ALON stated:

> "Ms. Simpson is an SEI Certified CMM Evaluator who understands the value and is expert in developing risk management plans for large system integration efforts. Ms. Simpson has used Risk radar and custom tools to categorize, prioritize, track, report, and mitigate project risk. She is experienced leading risk review meetings and presenting risks using project dashboard techniques."

AR 282. One of the Agency's evaluators noted that Ms. Simpson had "extensive project mgmt experience" and was "knowledgeable of PM process and Risk Radar tool." AR 786.

ALON clearly proposed a candidate for the position that met all of the Agency's desired characteristics for the Senior Risk Management position. Thus, there is no question that ALON's proposal submitted a person meeting the labor description in the RFQ for Senior Risk Management Specialist. Yet, DMSJV's brief completely ignores this fact.

**B. The Schedule 70 Position Proposed Did Not Have to Match The RFQ Labor Category Description**

DMSJV makes form over substance the linchpin of its argument by ignoring the resume of the person submitted by ALON for Senior Risk Management Specialist. Rather, DMSJV argues at pages 28-30 that because ALON's equivalent Schedule 70 position does not fully match the wording of the RFQ's Senior Risk Management Specialist, ALON's proposal must be rejected. None of the Offerors' proposed Schedule 70 Labor Categories fully fits the RFQ's Labor Category description for Senior Risk Management Specialist.

In response to the Agency's requested criteria (desired education: Bachelor's degree; desired general experience: twelve years; and desired specialized experience: two years), Protester identified its #7 *Systems Engineer* position as its equivalent FSS labor category. AR 647. That category requires a minimum Bachelor's degree and "over six years" experience. AR 676-677. In fact, the level of experience required by DMSJV in its equivalent labor category is, on its face, six years less than the twelve years desired by the RFQ. Thus, DMSJV's Schedule 70 position did not match the RFQ's Senior Risk Management Specialist's labor description.

Protester argues that a position entitled Senior Requirements Analyst (ALON's proposed equivalent labor category) cannot be used to staff a position entitled Senior Risk Management Specialist (Agency's category). Interestingly, while all of the other offerors proposed equivalent labor categories for this position from their FSS schedules, none of them selected a labor category from their Schedule 70 labor categories with a position title related to "risk management." *See* AR Tab 13. Protester's equivalent position title was: Systems Engineer. AR 647. Other offerors used titles such as Senior Network Engineer (AR 708); SME Func-5 (AR 714); and Principal Systems Engineer (AR 718). DMSJV's description of experience uses the words "risk management" once in a long string of "mechanisms." DMSJV's "Systems Engineer" description is not a full match to the RFQ position.

Protester's "Statement of Facts" at paragraphs 27 to 39 attempts to fill the record with alleged facts on what protester believes to be the function of a Senior Risk Management Specialist. Protester then proceeds to compare those representations with the Functional Responsibilities listed by ALON for its Labor Category 004 *Senior Requirements Analyst*. DMSJV's alleged facts are pure argument and are not facts in the record.

The Agency left it to each offeror's discretion to 'map' its proposed staffing to its existing Schedule 70 labor descriptions: Volume II (Pricing) submittal required offerors to indicate on their respective schedule of prices tables "Offeror's proposed equivalent labor category" [from their respective FSS contracts]. AR 147. Each offeror, in effect, certified that it could produce the required support services from an identifiable CLIN in an existing FSS contract. AR Tab 13. Each offeror had to propose an individual with requisite qualifications to provide the services required. AR 147. ALON did that.

The Agency rationally found ALON's candidate acceptable for the position based upon her resume. Accordingly, the functions of a Senior Risk Management Specialist as envisioned

by the Agency have been met by ALON's proposed personnel. ALON proposed that its candidate would be supplied through its Schedule 70 Labor Category 004 *Senior Requirements Analyst*. Thus, ALON met the requirement to supply its person based upon a Schedule 70 equivalent position.

## VII. CONCLUSION

In summary, the Protester has failed to meet its burden of proving by clear and convincing evidence that the Agency did not rationally evaluate the offerors' corporate experience. Additionally, the Protester has failed to meet its burden of proving by clear and convincing evidence that the Agency did not rationally accept Alon's proposed GSA Schedule 70 labor category for supplying a Senior Risk Management Specialist. Accordingly, the complaint should be dismissed.

Respectfully submitted,

/s/ Douglas L. Patin
Douglas L. Patin
BRADLEY ARANT ROSE & WHITE LLP
1133 Connecticut Ave., N.W., 12th Floor
Washington, D.C. 20036
Tel. 202-719-8241
Fax 202-719-8341
dpatin@bradleyarant.com
*Attorney of Record for ALON, Inc.*

*Of Counsel*

Jeremy Becker-Welts
BRADLEY ARANT ROSE & WHITE LLP
1133 Connecticut Ave., N.W., 12th Floor
Washington, D.C. 20036
Tel. 202-719-8207
Fax 202-719-8307
jbeckerwelts@bradleyarant.com