IN THE UNITED STATES COURT OF FEDERAL CLAIMS

********************************
DATA MANAGEMENT SERVICES
JOINT VENTURE,

No. 07-597C
(Judge Bruggink)

Plaintiff,

v.

THE UNITED STATES,

**Protected Information To Be Disclosed Only In Accordance With U.S. Court of Federal Claims Protective Order**

Defendant.
********************************

**INTERVENOR'S RESPONSE TO PROTESTER'S STATEMENT OF FACTS AND COUNTER-STATEMENT OF FACTS**

Pursuant to RCFC 52.1(b), Intervenor ALON, Inc., by counsel, submits its Response to Protester's Statement of Facts and submits its own Counter-Statement of Facts.

I. Statements of Fact Acceptable to Intervenor:

1. Intervenor takes no issue with the following proposed Statements of Fact submitted by Plaintiff: 1, 2, 3, 5, 6, 8, 11, 13, 14, 15, 17, 18, 20, 21, 23, 26, 40, 41, 44, 45, 46, 47, 48, 49, 50, 51, 52, 54, 55, 56, 57, 58, 59, 60 and 61.

II. Statements of Fact Unacceptable to Intervenor:

2. Intervenor objects to the characterizations of Paragraphs 27 through 39 as fact. The references to the Agency Record in these paragraphs are solely to wholly unsubstantiated argument asserted in written comments by counsel for Protester before the GAO.

III. Intervenor's Proposed Additional Statements of Fact:

3. Intervenor proposes that the following findings of fact be added to the record:

a. ALON proposed Ms. Brenda Simpson as its candidate to fill the Agency's Senior Risk Management Specialist proposed labor category.

b. In describing its proposed labor category for Senior Risk Management Specialist, the Agency desired a candidate with a Bachelors Degree in Business Administration, Public Administration, Engineering or related field. ALON's candidate Brenda Simpson has a Master of Accounting, Financial Budgeting & Management. AR 282.

c. In describing its proposed labor category for Senior Risk Management Specialist, the Agency desired a candidate with 12 years experience in planning or performing project or program risk analysis and management efforts. ALON's candidate Brenda Simpson's resume documented 17 years, 10 months experience in planning and performing projects, program risk analysis, and program and project management. AR 278 – 280.

d. In describing its proposed labor category for Senior Risk Management Specialist, the Agency desired a candidate with 2 years experience in facilitating risk review meetings and in applying currently available risk management tools such as Risk and Risk Radar on project plans, technical approaches, project schedule or cost estimation. ALON's candidate Brenda Simpson demonstrated 6 years, 11 months specialized experience which encompassed: development of project management and risk management plans for the State Department's ECA-MIS, using simulation techniques and tools, and risk monitoring and mitigation tools; performing risk management studies and activities related to supporting the Sybase Database Maintenance effort for the Small Business Administration; and as SEI/CMM Manager/Project Manager for the Drug Enforcement Administration, mentoring the DEA's Requirements Management, Risk Management, Software Project Tracking and Oversight Process Action

Teams and leading those teams to achieve SEI/CMM levels 2 and 3 certification. AR 282. In summarizing Ms. Simpson's relevant experience and qualifications, ALON stated: "Ms. Simpson is an SEI Certified CMM Evaluator who understands the value and is expert in developing risk management plans for large system integration efforts. Ms. Simpson has used Risk radar and custom tools to categorize, prioritize, track, report, and mitigate project risk. She is experienced in leading risk review meetings and presenting risks using project dashboard techniques." AR 282.

e. One of the Agency's evaluators noted that ALON's candidate Brenda Simpson had "extensive project mgmt experience" and was "knowledgeable of PM process and Risk Radar tool." AR 786.

IV. Declaration of Stephanie Simeone:

4. Intervenor files herewith the August 22, 2007 Declaration of Stephanie Simeone, filed in response to Protester's filing of the Declaration of Shawn T. O'Rourke.

V. Statements of Fact With Which Intervenor Takes Issue:

5. Intervenor takes issue with portions of Statements of Fact Nos. 4, 7, 9, 10, 12, 16, 19, 22, 24, 25, and 42. Intervenor has set out the original Statements of Fact below and appended its response to each:

**Original SoF No. 4**. The RFQ required offerors to submit quotes in accordance with the procedures outlined in Quotation Submittal Instructions and Oral Capability Presentation Instructions:

> The quote must be submitted in accordance with the procedures outlined in Quotation Submittal Instructions and Oral Capability Presentation Instructions (Copies Enclosed). The quotation must include items listed in the proposal instructions, including Personnel Data Form (Copy Enclosed), Letters of Commitment (Copy Enclosed), Past Performance information (Offeror Self-Assessment Past and Present Performance Information form enclosed), and Price Table. The basis for award is best value to NARA, in accordance

> with the Evaluation Factors for Award (Copy Enclosed). In doing so, the Government may award to other than the lowest priced quotation or other than the highest technically rated quotation.

AR 96. The RFQ required the submission of a price volume and a technical volume. AR 143. The RFQ required Alon to include in its written proposal those contracts on which it wished to rely for corporate experience:

> Data not submitted with the Offeror's quote, but submitted previously, or presumed to be known (i.e., previous projects performed for the Government) cannot and will not be considered as part of the Offeror's quote. AR 143.

**Intervenor Response:** Disagree. Intervenor states that the quotation referenced by Protester from AR 96 does not exist at that location. Intervenor further states that the final quotation of Paragraph 4 (attributed to AR 143) contains one sentence taken out of context from an entire paragraph and that no reference is made in that quoted-from paragraph on AR 143 to a requirement "to include in its written proposal those contracts on which it wished to rely for corporate experience." AND BY WAY of further response, Intervenor states that offerors were instructed to submit copies of their proposed slide presentations for Oral Capability with their written submissions; that the Agency intended to schedule a 30 minute period for each offeror to present its Oral Capability during which time those slides could be discussed; and that the Agency provided for a subsequent 30 minute question and answer period during which time the Agency could ask questions and seek clarification of each offeror's proposal. AR 151. Intervenor further states that ALON submitted its slides (AR 399 – 412) and that such slides contained information relating to ALON's corporate experience through the performance of other contracts (AR 409 – 411), including the TSA contract (AR 410).

**Original SoF No.7**. Notwithstanding the use of "desired" in the preceding paragraph, NARA "expect[ed] that all personnel meet the requirements contained in the SOW":

> Personnel Data Forms Personnel Data Form and letters of commitment will be evaluated as they reflect on the firm's understanding of the requirement in the SOW and the proposed technical approach. Key personnel clause will apply to core service positions. Further, the qualifications of the proposed personnel for whom Personnel Data Forms are submitted will become the minimum qualifications for any contractor personnel who may replace those personnel when performing under the affected labor category. The NARA Contracting Officer must approve replacements for proposed personnel before the contractor may utilize those replacement personnel. The Contracting Officer reserves the right to reject replacement personnel whose qualifications are deemed insufficient when compared to the original proposed person that they are proposed to replace. The Offeror must submit a formal written Personnel Data Form showing all relevant training, education, and work experiences that are pertinent to this task order for each person being proposed to work under this task order. All personnel proposed under Item 00001, as listed for this task order are considered to be key personnel. *The Government expects that all personnel meet the requirements contained in the SOW.* (Blank PDF forms provided as attachment to RFQ)

AR 145 (emphasis added). The Statement of Work was included as Enclosure 1 to the RFQ. AR 497-142. The SOW included the Labor Categories and Position Descriptions. AR 105-140.

**Intervenor Response:** Disagree in part. Intervenor objects to the argumentative and conclusory language employed by protester in the first sentence of Paragraph 7 and further states that the document speaks for itself. Intervenor corrects Protester's reference to Enclosure 1 of the RFQ to AR 97-142.

**Original SoF No. 9**. Amendment 2 to the RFQ required each offeror, without resort to subcontractors, to have all the labor positions on its GSA Schedule contract:

> Q4: Please confirm that the mapping of a bidders Schedule 70 pricelist to the POST labor categories is at the discretion and judgment of the bidder.
> **A4: The Offeror must designate their schedules' labor category in the excel spreadsheet POST Table of Prices. The mapping must be consistent with vendors' GSA Schedule 70.**
>
> Q5: May a bidder base, in part, their price proposal on labor categories submitted to GSA for inclusion in their Schedule 70 pricelist which are not, at the time of proposal submission, yet approved?

> **A5: No. Award will be made only against positions on the Offeror's GSA Schedule.**
>
> Q6: In the event a bidder chooses to subcontract a portion of the work to another Schedule 70 contract holder, may that subcontractor's pricelist be the basis for the portion of work subcontracted?
> **A6: No. Award can and will be made only against positions on the Offeror's GSA Schedule.**

AR 195 (emphasis in original).

**Intervenor Response:** Disagree in part. Intervenor states that Amendment 2, which forwarded questions and answers to all offerors, did not impose any requirement on offerors not already extant in the RFQ. The referenced section of Amendment 2 simply clarified the existing requirement that offerors could supply the required services through their existing GSA Schedule 70 contracts. SEE AR 147.

**Original SoF No. 10**. The RFQ required offerors to map the positions on their GSA Schedule contracts to the labor categories identified in the RFQ. AR 161-63.

**Intervenor Response:** Disagree in part. The RFQ required offerors to "show Offeror's proposed equivalent labor category" on the Pricing Table. AR 147.

**Original SoF No. 12**. As indicated in the preceding paragraph, the RFQ defined the subfactor corporate experience as follows:

> b) CORPORATE EXPERIENCE: Demonstrated recent and relevant corporate experience on work of similar scope, magnitude and nature: experience in staffing on-site program management support to major systems software development or integration projects. (Oral Presentation about what the firm has done)

AR 167. In Amendment 2 to the RFQ, NARA gave the following direction regarding oral presentations:

> The Offeror should discuss their recent and relevant experience on work of similar scope, magnitude and nature relating to on-site program management office support.

AR 197.

**Intervenor Response:** Disagree in part. Amendment 2 did not provide any new directions but simply repeated instructions already present in the RFQ. AR 152.

**Original SoF No. 16.** On December 11, 2006, NARA received five (5) proposals in response to the solicitation, including one from Alon and one from DMSJV. AR 1331. On January 17, 2007, Alon made its oral presentation, and on January 18, 2007, DMSJV made its oral presentation. AR 1331. DMSJV is a Small Business Administration ("SBA") approved joint venture formed in May 2004 under the SBA mentor/protégé program. See 13 C.F.R. § 124.520. DMSJV is a partnership between Data Management Services, Inc. ("DMS"), an 8(a), Woman-owned, HUB Zone company, and American Systems Corporation ("American Systems"), a large business. DMS is the managing venturer. At the time of submitting its quote, DMSJV had won and performed or was in the process of performing 18 contracts worth $20,674,000. AR 601. Two of those 18 contracts were included in the past performance portion of DMSJV's proposal for the instant procurement. AR 488-90, 494-96.

**Intervenor Response:** Intervenor agrees with the first two statements of Paragraph 16. Intervenor contends that the remainder of Paragraph 16 is irrelevant to this protest.

**Original SoF No. 19.** The past performance portion of the Alon proposal also included two contracts not included in Oral Presentation Slides 12 and 13:

> First, Alon's Archival Research Catalog ("ARC") contract with NARA, which had an initial dollar value of $231,394, with a follow-on contract with a present dollar value of $161,000. AR 233, 236.
>
> Second, Alon included in past performance a subcontract to a prime which contracted with the U.S. Secret Service ("USSS"), which had an initial dollar value of $1,250,000.00 and a final value on December 31, 2006 of $1,092,000.00. AR 250-51. NARA did not consider the USSS contract relevant for past performance. AR 806.

**Intervenor Response:** Disagree in part. ALON's Oral Presentation Slides included information about ALON's Archival Research Contract with NARA. AR 409.

**Original SoF No. 22.** The RFQ required the successful offeror to coordinate risk management with other contractors:

> Moreover, the POST contractor will be expected to cooperate and assist in coordinating activities with any other NARA contractors in the areas of configuration management, requirements management, risk management, testing, communications, quality management, etc.

AR 99.

**Intervenor Response:** Intervenor agrees that risk management is included within a list of five additional activities plus one 'etcetera.'

**Original SoF No. 24.** The RFQ provided that "Supervision and on-site management of the Program Office Support Team includes:"

> Identifying and evaluating any POST contract risks and report to the Government the status of those identified risks. The Contractor shall also formulate risk management plans for the elimination or reduction of any such risks.

AR 100.

**Intervenor Response:** Intervenor contends that the identified quote from the RFQ consists of the final statement of a five statement listing of the areas in which the POST contractor will provide supervision and on-site management.

**Original SoF No. 25.** The RFQ provided that "Risk Management support includes:"

- Implementation and revision of ERA program risk management plans;
- Facilitation of meetings held to identify, analyze, or plan mitigation strategies for ERA Risks;
- Support for tracking risk events and developing related reports for ERA Program stakeholders;
- Review, analysis and evaluation of internally or externally developed deliverables such as Risk Management Plans, Risk Response Plans, and other relevant project management plans;
- Development, tailoring and maintenance of risk management tools, such as risk registers, risk scoring templates, and risk mitigation and contingency plans;

- Support for Monte Carlo analysis and other tools in assessing the impact of risk adjustments to technical performance, costs and schedules;
- Support for risk management training activities.

AR 102.

**Intervenor Response:** Intervenor agrees that Protester has accurately quoted a list of seven out of approximately 69 support functions to be provided by the awarded vendor. SEE AR 100 – 104.

**Original SoF No. 42**. The Contracting Officer stated that requirements analysis is "one important area of risk management":

> A background or strong familiarization with Requirements Analysis would benefit the POST Senior Risk Management Specialist as one important area of risk management involves requirements analysis.

AR 1436. The Agency argued that the Senior Requirements Analyst did not have to meet the general experience requirement of the Senior Risk Management Specialist because the experience level is desired and not a required minimum. AR 1480.

**Intervenor Response:** Disagree in part. The statement attributed to the contracting officer constitutes one sentence out of an entire paragraph discussing the issue. AR 1436. The argument attributed to the Agency is an incomplete summary of the Agency's statement. The actual statement made is: "To clarify, however, NARA's job description for the Senior Risk Management Specialist states that the Agency *desires* twelve years of general experience. Alon *requires a minimum* of 10 years experience for the Senior Requirements Analyst. Because NARA's *desired* experience level is not a *required* minimum, this difference is not sufficient to disallow use of Alon's proposed labor category." AR 1480. BY WAY OF further response, Intervenor states that the GSA Schedule labor category proposed by Protestor to fill the Senior

Risk Management Specialist position was its #7 Systems Engineer, a position which only required "over six years of experience." AR 676.

Respectfully submitted,

/s/ Douglas L. Patin
Douglas L. Patin
BRADLEY ARANT ROSE & WHITE LLP
1133 Connecticut Ave., N.W., 12th Floor
Washington, D.C. 20036
Tel. 202-719-8241
Fax 202-719-8341
dpatin@bradleyarant.com
*Attorney of Record for Intervenor, ALON, Inc.*

*Of Counsel*

Jeremy Becker-Welts
BRADLEY ARANT ROSE & WHITE LLP
1133 Connecticut Ave., N.W., 12th Floor
Washington, D.C. 20036
Tel. 202-719-8207
Fax 202-719-8307
jbeckerwelts@bradleyarant.com

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 07-597C

********************************

DATA MANAGEMENT SERVICES JOINT VENTURE,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

********************************

**Protected Information to be Disclosed Only in Accordance with U.S. Court of Federal Claims Protective Order**

## DECLARATION OF STEPHANIE SIMEONE

1. My name is Stephanie Simeone and I am an individual over eighteen (18) years of age and am competent to testify.

2. I make this Declaration from my own personal knowledge.

3. I am the President and Chief Executive Officer of ALON, Inc.

4. On August 20, 2007, I was provided a copy of a Declaration made by Shawn T. O'Rourke in the above-captioned matter (the "O'Rourke Declaration"). Having reviewed the O'Rourke Declaration, I have discovered statements therein in need of expansion or correction and do so herein. I have identified the corresponding paragraph number from the O'Rourke Declaration below and thereafter added my expansion and/or correction.

5. O'Rourke Declaration Paragraph 11: On July 27, 2007 ALON received a telephone call and subsequent email from David Harold indicating his interest in working for ALON in support of the NARA POST contract. On July 30, 2007 ALON emailed an

employment offer letter to David Harold. On July 31, 2007, David Harold sent an email to ALON declining the employment offer.

6. O'Rourke Declaration Paragraph 12: William Wingood and David Leistner started as ALON employees on August 8, 2007.

7. O'Rourke Declaration Paragraph 13: ALON has signed subcontracting agreements with Storage Resources, LLC for the services of Mark Huber, and Lake Information Systems, LCC for the services of Alla Lake, both starting August 27, 2007.

8. O'Rourke Declaration Paragraph 14: ALON never offered Ursula Kuehn a position on the contract.

9. O'Rourke Declaration Paragraph 15: ALON did not interview Janice Roberts. ALON did meet with her to acquire an understanding of the work in progress as part of ALON transition activities.

10. O'Rourke Declaration Paragraph 18: ALON has executed a consulting agreement with Thu Nguyen effective August 14, 2007.

11. O'Rourke Declaration Paragraph 19: The majority of personnel currently employed on the contract are ALON employees and not former American Systems employees or subcontractors.

I declare under penalty of perjury that the foregoing is true and correct.

August 22, 2007

Stephanie Simeone